## MONROE BODY CO. et al. v. HERZOG et al.

(Circuit Court of Appeals, Sixth Circuit. April 1, 1924. On Application for Rehearing, June 28, 1924.)

No. 3840.

**Patents ☞328—919,351, claims 1 and 5, held valid and infringed.**
Herzog patent No. 919,351, claims 1 and 5, for a mechanism to automatically feed boards into planers, *held* valid and infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by John Herzog and another against the Monroe Body Company and another. There was a decree for plaintiffs, and defendants appealed, and after appeal new matter arose on a motion which was certified up, and a so-called supplemental appeal was subsequently perfected. Original decree affirmed, and order entered respecting supplemental appeal.

Fred L. Chappell, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich. on the brief), for appellants.

Wm. J. Belknap, of Detroit, Mich. (Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich., on the brief), for appellees.

Before DENISON and DONAHUE, Circuit Judges, and SATER, District Judge.

SATER, District Judge. Prior to the use of Herzog's device, covered by patent No. 919,351, applied for February 15, 1908, and issued April 27, 1909, jointers or buzz planers were operated by skilled workmen by manually passing boards lengthwise over a revolving cutter or knife, for the purpose of producing a flat surface on the under side. The boards, when passing over the cutter, were required to be so held by continuing uniform pressure of the workmen's hands upon their upper surface as not to rock or move laterally. If they were warped and permitted to rock, a straight surface would not be obtained by their treatment. If the operator became careless, or if the board was knocked from under his hands (as was not unusual if the knife hit a knot, for instance), his hand was liable to be caught by the knife, in consequence

of which the mutilation of operators' hands was a frequent occurrence. Herzog undertook to devise a mechanism which would automatically so feed boards to the cutter as to avoid the danger incident to the hand-feeding method, and yet with such slight pressure as would not bend or spring the board from either its natural or assumed shape, so that, when the machine work on it was completed, the planed surface would be straight.

His mechanism is mounted on a separate frame surrounding the main frame of the jointer and having four posts connected by longitudinal and crossbars. Above his jointer bed is an endless chain, which passes over sprocket wheels at opposite ends of the frame, which extends across between the posts and above the bed of the jointer. The chain is formed of parallel members, which engage the sprockets, and a series of parallel crossbars attached to and extending from the members on one side of the chain to the members on the opposite side, to which crossbars are secured the feeding devices, consisting of a plurality of sharpened fingers or pins. The fingers may, with respect to each other upon succeeding bars, be in alignment or staggered, and are adapted to slide in sockets on the crossbars. Each finger has, as a part of it, a collar on which rests a spring within its socket. The spring presses the finger downward, but, when the finger is in contact with a board passing through the jointer, it is lifted somewhat against and is held in position by the spring, thereby securing uniform pressure of the finger upon the board. The plurality of fingers, when brought into contact with the upper surface of the board, is so distributed over it laterally and longitudinally as to conform, on account of their comparatively light pressure on the board, to its contour without springing it from its shape, whatever its shape may be, and thus prevents it from rocking or changing its position in relation to the table or bed on which it rests—the pressure of the large number of fingers contacting with the board being sufficient for them to travel with it and pull or drive it with them over the cutter and through the machine. The necessity of workmen holding the board and guiding it in the planing process is thus obviated. Mechanism is provided for driving the endless chain. The frame on which the chain is mounted is adjustable, and is movable towards or from the jointer table or bed, to accommodate different thicknesses of boards, and to permit the sharpening of the knives. When a board is to be planed, this frame is adjusted with reference to the board's thickness. The board, on being inserted, is caught by the plurality of fingers on the moving chain, and carried over the cutter and through the machine without being sprung from the shape it had when it entered the device. The board, thus prevented from rocking or changing its position with reference to the planer table, is cut away and straightened on its underside.

Herzog's jointer promptly went into use as a practical and meritorious device and met with commercial success. He filed a bill against the Monroe Body Company, which was using a machine constructed under the Smith patent, No. 1,249,533, applied for March 22, 1917, and issued December 11, of that year, and charged infringement of

claims 1 and 5, shown in the margin.[1] Subsequently Smith intervened, and on his request was made a defendant, and joined with the Monroe Body Company in an amended answer. Smith's patent shows a feeding band or belt with dogs (fingers) to be used as a feeding device in connection with the jointers. He employed a frame with supporting posts. Above his jointer bed is a frame, at each end of which is a sprocket wheel, over which wheel passes an endless belt or chain, whose outer members or sides are connected by a plurality of parallel crossbars, to which are attached longitudinally of such bars fingers (called dogs), which may be in alignment or in a staggered position with respect to each other upon succeeding crossbars. His fingers are not shaped the same as Herzog's, but each has a curved surface, on which are a series of teeth pressed downward by a spring. When the fingers are pressed upward by contact with a board, they are held in position by their respective springs and with uniform pressure upon the board. When his device is in operation, the points of his fingers contact with the board laterally and longitudinally and (the pressure of the fingers being light) assume the contour of the board, and, thus holding with sufficient firmness to prevent its rocking or shifting its position in relation to the jointer bed, push it through the jointer without the use or guiding of the workman's hand. His endless chain is driven by suitable mechanism, and with its supporting frame may be raised or lowered as the thickness of the board to be planed may require.

Unless Smith's conception of the device antedates that of Herzog, it is not only a close copy of all the essential details of Herzog's, but functions the same, and, as held by the trial court, is a manifest infringement, if Herzog exercised the creative faculty. Smith claims that he conceived his mechanism in 1906 or 1907, and made a drawing and model of the same at that time, but took no action to obtain a patent until 1917. The evidence pro and con touching this point is too voluminous to be reviewed. Suffice it to say it is convincing that when, as a pattern maker, he was in the employ of the Jackson-Church Company at Saginaw, Mich., from June 15, 1914, to January 20, 1915, which company was engaged in the manufacture of the Herzog machines, he spent a portion of his time in looking over and copying measurements of the Herzog device and studying the blueprints of the same in the pattern room, instead of performing his duties as a pattern maker, for which conduct he was discharged. Thereafter, by virtue of the knowledge thus acquired, he brought out his patent and attempted to despoil Herzog of his invention and its fruits by asserting a spurious claim of priority. The lower court rightfully so held.

[1] 1. The combination, with a bed and a rotary cutter projecting upward therethrough, of an endless work carrier positioned above said bed, comprising a series of crossbars and a plurality of yieldable fingers arranged longitudinally of each crossbar, said fingers being so positioned and arranged as to conform to the lateral and longitudinal contour of the work.

5. The combination with a bed and a rotary cutter projecting upwardly therethrough, of adjustable standards projecting upwardly from said bed, an endless work carrier supported on said standards, for feeding and holding the work in engagement with the cutter, said carrier comprising a series of crossbars and a plurality of yieldable fingers arranged longitudinally of each crossbar and adapted to conform to the lateral and longitudinal contour of the work.

To show anticipation negativing invention, catalogues exhibiting woodworking machines, evidence of alleged prior uses and about 20 patents found in the prior art were introduced. A review of them would unduly prolong this opinion and serve no useful purpose. If it be conceded that the different elements entering into Herzog's combination are old, he brought them into combination as an entirety in a new way as a new thing and obtained a novel, useful, and highly successful result. No one, however, had previously adjusted fingers to crossbars as he did. His device avoids the mutilation of workmen's hands, which is quite frequent in the use of hand-feeding machines. It is labor-saving and economical, in that it enables one operator to do from two to four times as much work in a given time as he could do by hand. If a warped board, in going through the jointer, be pressed until straightened, its whole under side will be planed, but the board will still retain its warped condition. The fingers of his mechanism so impinge upon such a board as to move it forward over the buzz planer, and yet hold it so yieldingly as not to press the board out of its distorted shape. If the cutter removes the whole of the warp, the board's under surface will be straight. If a part only be removed, the treatment of the board is repeated until a straight surface is obtained. No prior device, patented or otherwise (excepting the hand-fed machines), would true the surface of a warped and twisted board. The prior art does not disclose any device for automatically feeding boards to a jointer by simulating the hand-feeding operation of any woodworking machine in which the feeder so conforms to the lateral and longitudinal contour of the material to be operated upon as to prevent the material from changing its position in relation to the table or bed over which it is to pass and at the same time hold the material against any rocking or lateral movement as it travels through the machine. That Herzog succeeded in obtaining by study and experimentation a valuable result which others failed to accomplish is persuasive that more than mere mechanical skill was present. Invention was involved. It must be held that his patent is valid and infringed, and the District Court is accordingly affirmed.

The interlocutory decree permitted Smith under the terms of his supersedeas bond to make and sell ten of the infringing machines. Following the entry of the decree he made three of such machines, and also three others in accordance with the description of an applied-for patent and differing from the infringing device. He thereupon, after the appeal was effected, moved the trial court for a finding that the three last named machines do not infringe the Herzog patent. The parties having appeared by counsel, Smith's motion was denied. His new structure was held to infringe the claims of the Herzog patent, the fabrication of other such structures was enjoined, and appellants were ordered to account for such as had been manufactured. The proceedings on the motion were certified to this court in the appeal theretofore taken and then pending here. A so-called supplemental appeal was subsequently perfected, with a prayer that the same be heard with and as a part of the pending appeal from the original decree. Objection having been interposed to the consideration of the alleged supplemental appeal, because the structure therein mentioned had not been presented on the original hearing, appellants moved that, if this court

should conclude that the second appeal was improperly taken, it nevertheless would receive and consider the additional structure in determining the question of infringement brought here on the original hearing. Such motion is resisted.

The question of the trial court's jurisdiction to entertain the so-called supplemental proceeding is involved, but we do not find it necessary to determine it. No evidence on an accounting has as yet been taken. To the end that litigation may be quickly terminated, and with no intention of establishing a precedent, we have concluded the supplemental appeal, so called, should not be dismissed. An order, whether its making is necessary or not, will be entered, authorizing such proceeding. On the hearing of Smith's motion touching his new device Herzog offered no evidence, but invoked the familiar rule that, after the approval of a supersedeas bond and the lodgment of the case in this court, the jurisdiction of the trial court was gone. Keyser v. Farr, 105 U. S. 265, 26 L. Ed. 1025; Foster, Fed. Prac. (6th Ed.) § 709. The order of authorization will provide that within a short time, to be fixed by the trial court, evidence may be introduced by the parties, or any of them electing so to do, regarding the character of Smith's new device, and that a transcript of such evidence and a complete record of the proceedings had and of the order or decree entered be sent to this court, in addition to the records now here in the original and so-called supplemental appeals, that the matter in issue may in due course be heard. If the litigants each stipulate to waive further presentation to the court below, a record of what happened on the hearing of the motion should then be treated as the record upon a duly authorized application, and transmitted to this court as additional to the records already here. If the parties stipulate that the question as to infringement by Smith's new structure heretofore transmitted to this court shall be determined on the records now before us, treating such new structure as properly in evidence, the court will proceed to decide the case as it indicated it might do in Firestone Tire & Rubber Co. v. Seiberling, 245 Fed. 937, 158 C. C. A. 225. If the parties stipulate for either of the modes above suggested, Herzog's counsel will be allowed 30 days in which to file a brief and the appellants 15 days to reply thereto.

An order may be taken in accordance with the foregoing.

### On Application for Rehearing.

It was not intended to hold and the opinion heretofore filed, fairly interpreted, does not indicate, that before Herzog's invention the only method of truing boards on a jointer was by workmen pushing the material through the machine with their hands. That was one of the methods of operation. The reference to the prior art sufficiently shows that other patented devices for planing boards preceded Herzog's and that, borrowing from the prior art, he effected a new combination of elements in such a manner as to produce a new thing, and a new, useful, and highly successful result. The prior art was considered in detail in the original study of the case, and the conclusion was reached that Herzog's device was not anticipated. A review of the earlier patents would not, therefore, be helpful.

The application for a rehearing is denied.